UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JACKIE W. McBEE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Nos.: 3:95-cr-082 |
| | ) 3:08-cv-444 |
| | ) *Judge Jordan* |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Jackie W. McBee ("petitioner"). The government moves to dismiss the § 2255 motion as untimely. For the following reasons, the motion to dismiss [Court File No. 69] will be **GRANTED**, the § 2255 motion will be **DENIED** as time-barred, and this action will be **DISMISSED**. All other pending motions will be **DENIED** as **MOOT**.

Petitioner was convicted by a jury of one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, in violation of 18 U.S.C.. § 922(g). By judgment entered November 28, 1995, he was sentenced as an armed career criminal, pursuant to 18 U.S.C. § 924(e), to concurrent terms of imprisonment of 327 months; the sentence included an enhancement for possession of a firearm in connection with a crime of violence.

The convictions and sentence were affirmed on direct appeal. *United States v. McBee*, No. 95-6658, 1997 WL 10950 (6th Cir. Jan. 10, 1997) (unpublished opinion). The Sixth Circuit summarized the facts against petitioner as follows:

> McBee met one Jeffrey Dean Mason in 1987 while both were serving time in a Tennessee state prison. In May 1992, after Mason had been released from prison, Mason received a collect call from McBee. McBee had escaped from prison, and wanted assistance from Mason in getting money to buy a car and leave town.
>
> Mason picked McBee up at a motel in Lenoir City, Tennessee the day after McBee called, and saw that McBee had a .38 caliber firearm with the serial numbers removed, along with fifty rounds of ammunition. Over the next several days, Mason drove McBee around Knoxville while McBee robbed various retail establishments.
>
> On the morning of May 15, Mason picked up McBee and Ronald Womack, a man that Mason had met in 1984 when both were serving time in prison. McBee announced his intention of robbing the Charter Federal Savings Bank in Knoxville, and further announced that both Mason and Womack would have to assist.
>
> Womack and McBee entered the bank, while Mason waited outside in his car. Following the robbery, one teller told investigators that although she did not observe the two robbers enter the bank, she heard one say, "Get down, don't touch anything, do what I say or I'll shoot you." One robber, who carried a small handgun, then emptied her top drawer of its cash, while the other emptied the drawers of two other tellers. The first teller later identified McBee from a photographic lineup as that robber, specifically noting a similarity in hairlines. The other two tellers, however, picked Jeffrey Mason rather than McBee out of the same lineup.
>
> When McBee and Womack exited the bank and got into Mason's car, they had approximately $12,000. The three evenly divided the money, and Mason dropped McBee and Womack off near the house of McBee's girlfriend, Joy Bryant.
>
> That evening, Knoxville patrol officer Gary Price observed a man named Clyde Williams in an alley next to a white Monte Carlo automobile,

leaning into the passenger window. Aware of an outstanding arrest warrant on Williams, Price turned his car around to go back and arrest Williams. After Price successfully placed Williams under arrest, he turned back to the Monte Carlo, where he observed that "Joy Bryant was the driver and ... Mr. McBee was the passenger in that vehicle." Price called for back-up, and then he and the new officer arrested McBee. When Price performed a pat-down, he found three .38 caliber rounds of ammunition in McBee's left front pocket, along with $963 in cash. The second officer put McBee in his cruiser and left the scene.

Meanwhile, Price asked Bryant if he could search the vehicle, and she assented. Price found a black Smith & Wesson revolver, fully loaded, with its serial numbers removed, underneath and toward the back of the driver's seat; based on the positioning of the weapon and the layout of the car, Price concluded that the passenger-that is, McBee-would have had more direct access to the gun than the driver, "because all he would have had to have done was reach in the gap behind the seat." In a later telephone conversation with Price, Bryant told Price that the gun was not hers, as did Bryant's mother, the owner of the car. During the interrogation of McBee, an officer asked him if the gun was his. He allegedly replied: "I'm not going to say that gun is mine, but if it was, it was not for the police, but it was for some other guys who were after me."

*Id*. at ** 1-2.

Petitioner waited over ten years before filing his § 2255 motion. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, § 2255 provides for a one-year statute of limitation in which to file a motion to vacate sentence. The limitation period generally runs from the date on which the judgment of conviction becomes final.

In support of his § 2255 motion, petitioner alleges the following: (1) the court violated his right to due process when it failed to inquire into petitioner's mental competence to stand trial and failed to hold a competency hearing; and (2) petitioner's attorney rendered ineffective assistance of counsel when he failed to investigate, preserve, or raise the issue of

3

competence on appeal. Petitioner acknowledges that his § 2255 motion is untimely but contends that the delay should be excused based upon his mental incapacitation; he also claims that he was not aware he could collaterally attack his conviction under § 2255 until he spoke with a fellow inmate shortly before filing his motion. For those reasons, petitioner alleges he is entitled to equitable tolling of the statute of limitation.

The Supreme Court has held that equitable tolling of a statute of limitation is available "in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). Petitioner has the burden of demonstrating that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citations omitted). "A habeas petitioner is entitled to equitable tolling only if two requirements are met. First, the petitioner must establish 'that he has been pursuing his rights diligently.' And second, the petitioner must show 'that some extraordinary circumstance stood in his way and prevented timely filing.'" *Hall v. Warden, Lebanon Correctional Institution*, 662 F. 3d 745, 749 (6th Cir. 2011) (quoting *Holland v. Florida*, 130 S. Ct. at 2562) (holding that counsel's failure to turn over the trial transcript as well as other documents related to the case and the prison's restriction on visits to the law library did not entitle petitioner to equitable tolling). "The doctrine of equitable tolling is applied sparingly by federal courts," and is typically used "only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (citations and internal quotations marks omitted).

4

With respect to petitioner's assertion that he was unaware of § 2255 relief, "[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). Accordingly, petitioner's professed lack of knowledge of § 2255 and its attendant statute of limitation, without more, will not serve to equitably toll the statute of limitation. *See, e.g., Harrison v. I.M.S.*, 56 F. App'x 682, 685 (6th Cir. 2003) ("Petitioner's alleged ignorance of legal matters does not demonstrate a lack of constructive knowledge of the filing deadline."); *Miller v. Cason*, 49 F. App'x 495, 497 (6th Cir. 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition.").

Petitioner also alleges that his delay in filing the § 2255 motion should be excused based upon his mental incapacitation. The Sixth Circuit has held:

> [A] petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations. To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations. In short, a blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required.

*Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011). *See also McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008) (citations omitted) ("mental incompetence is not a *per se* reason to toll a statute of limitation); *Price v. Lewis*, 119 F. App'x 725, 726 (6th Cir. 2005) (citations omitted) ("Illness--mental or physical--tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period."); *Nowak v. Yukins*,

5

46 F. App'x 257, 259 (6th Cir. 2002) (citations omitted) ("The mental incapacity of the petitioner can warrant the equitable tolling of the statue of limitations. The petitioner must make a threshold showing of incompetence, and demonstrate that the alleged incompetence affected [petitioner's] ability to file a timely habeas petition.").

Petitioner has provided the Court with documentation concerning a civil rights action he filed in this court in 1994 against the Knox County Sheriff's Department, which was originally filed *pro se* and was eventually settled in 1997. *Jackie v. McBee v. Tim Hutchison, et al.*, Civil Action No. 3:94-cv-637 (E.D. Tenn. November 26, 1997) (agreed order of dismissal). He refers to the fact that, in 1996, the Court appointed counsel to represent petitioner in those proceedings based upon a physician's determination that petitioner was unable to effectively represent himself in the legal proceedings. A copy of the Report of Physicians' Findings is attached to the § 2255 motion. [Criminal Action No. 3:95-cr-82, Court File No. 66, Attachment 4].

Dr. Alan D. Megibow, the psychiatrist who examined petitioner at the Court's request in order to determine petitioner's ability to represent himself, found that petitioner suffered from Obsessive Compulsive Disorder (OCD), which was being treated by Prozac. [*Id*]. Dr. Megibow found no evidence of psychosis, organic mental impairments, or clinical depression, and noted that petitioner was cooperative and understood the purpose of the examination. [*Id*.]. Dr. Megibow specifically opined as follows:

> Although partially alleviated by Prozac, there is still sufficient symptomatology to confirm the OCD diagnosis. In attempting to read legal documents to me, the patient becomes increasingly uncomfortable, and begins

6

> repeating sentences, counting letters, and re-checking what he has read. This is very frustration [sic] to him, further enhancing his anxiety, and thereby worsening the compulsive acts.
>
> On the basis of the above, it is my opinion that Mr. McBee would have extreme difficulty in effectively and efficiently representing himself without assistance, since the judicial process requires a substantial amount of written communication. His psychiatric disturbance results in a significant disability in that regard.

[*Id.*].

The fact that Dr. Megibow found petitioner would have difficulty representing himself without the assistance of counsel does not mean petitioner was not competent to stand trial. An individual who suffers from a mental illness is still competent to stand trial if he "has 'a rational as well as factual understanding of the proceedings against him'" and "'has sufficient present ability *to consult with his lawyer* with a reasonable degree of rational understanding.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

By the same reasoning, petitioner's mental impairment alone does not entitle him to equitable tolling of the statute of limitation. Petitioner has not demonstrated that his OCD rendered him unable to timely file a § 2255 motion or otherwise pursue his legal remedies. Obviously, at the time he was suffering from OCD, he was able to file a *pro se* civil rights complaint against the Knox County Sheriff's Department. He was also able to escape from prison, rob various retail establishments, and plan and execute a scheme to rob a bank.

Under the circumstances, the Court finds that petitioner is not entitled to equitable tolling of the statute of limitation and thus his § 2255 is time-barred. *See Jurado v. Burt*, 337

7

F.3d 638, 643 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)) ("'Absent compelling equitable considerations, a court should not extend limitations by even a single day.'").

The government's motion to dismiss will be **GRANTED**, petitioner's motion to vacate, set aside or correct sentence will be **DENIED** as time-barred, and this action will be **DISMISSED**. All other pending motions will be **DENIED** as **MOOT**. In addition to the above, this Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

    **AN APPROPRIATE ORDER WILL ENTER.**

                                                                           s/ Leon Jordan
                                            United States District Judge